NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0015n.06
Filed: January 10, 2005

No. 03-2060

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

WILLIAM FRANCIS KAHLICH,

     Plaintiff-Appellant,

v.

THE CITY OF GROSSE POINTE FARMS, ET
AL.,

     Defendants-Appellees.

                                        /

On Appeal from the United
States District Court for the Eastern
District of Michigan

BEFORE:    RYAN, COLE, and ROGERS, Circuit Judges.

     RYAN, Circuit Judge.     The plaintiff, William Francis Kahlich, appeals the district court's order granting the defendants' motion for summary judgment and dismissing the plaintiff's claims filed under 42 U.S.C. § 1983 and state tort law. Kahlich alleges that various employees of the City of Grosse Pointe Farms, Michigan, conspired to harass and intimidate him at the direction of his son-in-law, defendant Andrew Rogers, a Grosse Pointe Farms Public Safety Officer. We find, partly for reasons not articulated by the district court, that summary judgment was properly awarded the defendants.

**I.**

     Kahlich's claim is premised in large part on a family feud between Kahlich and his son-in law, Officer Rogers. Kahlich claims that Rogers intended to seek "revenge" against

him, and that Rogers's "plan to harass and intimidate" Kahlich was the driving force behind the series of events leading to Kahlich's arrest.

While out on patrol on September 10, 2000, Rogers noticed an unoccupied car with an invalid license plate parked in the street. Because of where it was parked, Rogers thought the car probably belonged to his father-in-law, plaintiff Kahlich. Officer Rogers did not issue a citation, but later informed his shift commander Lieutenant Jack Patterson of the violation. Patterson wrote a ticket himself and placed it on the car, leaving the "vehicle owner" information line on the ticket blank, which was the usual practice. Patterson, however, incorrectly checked a box indicating that the ticket was a "civil infraction," when, in fact, under the applicable ordinance, parking without valid license plates is a "misdemeanor."

In due course, court clerk Kathy Zeckzer processed the ticket, filling in Kahlich's name as "owner," at the direction of Patterson. Zeckzer also entered the ticket into the computer system as a "misdemeanor," not a "civil infraction" as the ticket indicated.

As it turned out, Kahlich did not own the car, but it was in his possession for the purpose of performing some maintenance on it in the repair shop he ran out of his home. The day after the ticket was issued, Kahlich visited the city's offices to clear up the matter. Zeckzer informed Kahlich that the ticket had been turned over to the court, and that he would be notified by mail when a court date was set. Kahlich did not admit ownership of the vehicle.

After being notified of the first hearing date, Kahlich requested and received an adjournment. He did not, however, appear for the new hearing date of November 14, 2000. Kahlich was out of town for a period of time and upon returning on January 31, 2001, he

discovered notices in his mail indicating that a bench warrant had been issued for his arrest. On February 1, 2001, Kahlich posted a $200 bond to clear the warrant and paid $25 to reinstate his driver's license. Grosse Pointe Farms court administrator Lynn MacKenzie processed these transactions and issued the plaintiff a clearance form indicating he had satisfied the warrant. However, MacKenzie failed to follow proper procedures to cancel the warrant, and therefore, it remained in force and on file.

The next day, February 2, 2001, Kahlich was stopped by Grosse Pointe Park Police for speeding. In addition, the vehicle he was driving had no license plate and Kahlich had no valid registration information. Checking with his dispatcher, the officer was advised that there was a warrant for Kahlich's arrest "on file" in Grosse Pointe Farms and that the warrant was "good."

Grosse Pointe Farms Officers John Bruno and James McMahon were dispatched to take custody of Kahlich. It is undisputed that Bruno was familiar with the problems between Rogers and Kahlich. Upon arrival, Bruno handcuffed Kahlich behind his back, despite Kahlich's request that he be handcuffed in the front due to a bad back. Kahlich objected, stating that he had a clearance form representing that the warrant had been cancelled, but the officers told the plaintiff that they must take him into custody and return to the police station to clear up the matter. Kahlich was placed in a holding cell where he remained, still handcuffed, for approximately fifteen minutes before McMahon determined that Kahlich had indeed posted bond and that the arrest warrant had erroneously not been recalled. Kahlich was then immediately released.

Kahlich filed suit in federal district court asserting claims under 42 U.S.C. § 1983 and Michigan tort law. The district court later granted the defendants' motion for summary judgment on all claims.

**II.**

We review the district court's decision to grant summary judgment <u>de</u> <u>novo</u>. <u>Smith v. Ameritech</u>, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, we must view the evidence and draw all reasonable inferences in favor of the non-moving party. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

**A.**

The individual defendants moved for summary judgment on the grounds of qualified immunity. However, in its ruling from the bench, the district court addressed the merits of each of the plaintiff's claims and did not make it clear that the grant of summary judgment was based on qualified immunity. Because we may affirm on any ground supported by the record, we may review whether the individual defendants are entitled to qualified immunity. <u>Thacker v. City of Columbus</u>, 328 F.3d 244, 259 n.8 (6th Cir. 2003).

The doctrine of qualified immunity shields government officials from civil liability in the performance of discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). The benefit of qualified immunity "'is effectively lost if a case is erroneously permitted to go to trial.'" <u>Weaver v. Shadoan</u>, 340 F.3d 398, 406 (6th Cir. 2003) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)).

Thus, the threshold question is whether the facts alleged, viewed in the light most favorable to the party asserting injury, show the violation of a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If there has been no such violation, the inquiry ends and the defendant is entitled to judgment. Id.; Cartwright v. City of Marine City, 336 F.3d 487, 491 (6th Cir. 2003).

Kahlich alleges two constitutional violations. First, he argues that his arrest was made without probable cause, and thus, in violation of the Fourth Amendment, and second, that the officers used excessive force in violation of the Fourth Amendment in arresting, handcuffing, and detaining him in a holding cell.

Probable cause to make an arrest exists if, "at the moment of the arrest, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'" Klein v. Long, 275 F.3d 544, 550 (6th Cir. 2001) (quoting Donovan v. Thames, 105 F.3d 291, 298 (6th Cir. 1997)). Courts must view these facts "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Kostrzewa v. City of Troy, 247 F.3d 633, 639 (6th Cir. 2001) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). "In the § 1983 context, the question of whether probable cause existed is left for the jury, unless there is only one reasonable determination possible." Crockett v. Cumberland College, 316 F.3d 571, 581 (6th Cir. 2003).

Viewing the evidence in the light most favorable to Kahlich, we think the district court properly concluded that the officers had probable cause to arrest Kahlich. The clearance form and Kahlich's protestations did not undermine probable cause as established by the

facially valid arrest warrant.  The officers were under no constitutional duty to resolve at the scene of arrest Kahlich's claim that the facially valid arrest warrant had been "cleared."  See Masters v. Crouch, 872 F.2d 1248, 1253 (6th Cir. 1989).  The officers took Kahlich to the station house directly and he was released after fifteen minutes of investigation.  We cannot conclude that the officers' actions were unreasonable.

The fact that one of the arresting officers was "aware of the conflict" between his brother officer and Kahlich falls far short of supporting the assertion of a department-wide conspiracy to exact revenge upon him.  Moreover, this arresting officer's candid revelation that he would not have arrested his own father-in-law is irrelevant to this objective inquiry.  There is but one reasonable conclusion:  The officers had probable cause to arrest Kahlich.

Kahlich's second claim is that the officers used excessive force when they handcuffed him in back and subsequently left him handcuffed in a holding cell for approximately fifteen minutes.  The Fourth Amendment protects an individual's right to be free from the use of excessive force by law enforcement.  Watkins v. City of Southfield, 221 F.3d 883, 887 (6th Cir. 2000).  Excessive-force claims are reviewed under the Fourth Amendment standard of reasonableness.  Saucier, 533 U.S. at 209.  Courts must judge the use of force from the perspective of a reasonable officer on the scene, under the totality of the circumstances, without regard to the officer's underlying intent or motivation.  Graham, 490 U.S. at 396-97.

However, "when there is no allegation of physical injury, the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment."  Neague v. Cynkar, 258 F.3d 504, 508 (6th

Cir. 2001) (footnote omitted).  Kahlich alleged no physical injury.  In fact, when deposed and asked if he was "physically injured by virtue of their handcuffing [him]," he responded, "I can't say that I was."  Because there was no allegation of physical injury, the district court correctly concluded that Kahlich's excessive-force claim fails.

The facts when viewed in the light most favorable to Kahlich show no constitutional violation.  Thus, the individual defendants were entitled to qualified immunity and the district court's grant of summary judgment on these claims must be affirmed.

**B.**

Kahlich also alleges, in essence, that the City of Grosse Pointe Farms failed to enact a policy or train its employees to properly address what happened here; that is, the situation in which an employee erroneously fails to cancel an arrest warrant and the arrestee presents a clearance form to the arresting officers.  Kahlich alleges that the failure to have a policy or train its employees in this regard demonstrates Grosse Pointe Farms' policy of "deliberate indifference" to the rights of its citizens.

To assert a successful § 1983 claim against a municipality, a plaintiff must show that a governmental policy or custom caused the injury.  Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690-91 (1978).  Where a plaintiff alleges municipal liability for failing to train its employees adequately, liability will be found "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants . . . ." City of Canton v. Harris, 489 U.S. 378, 389 (1989).

First, Kahlich's claim of municipal liability fails because the facts when viewed in a light most favorable to him fail to provide the requisite showing that any employee of

Grosse Pointe Farms inflicted a constitutional harm upon him. Ewolski v. City of Brunswick, 287 F.3d 492, 516 (6th Cir. 2002) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)).

Additionally, Kahlich failed to show that the purported need for a policy or additional training was "so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that the city was "deliberately indifferent to the need." City of Canton, 489 U.S. at 390. Kahlich questions the training and supervision of the court clerk who entered the parking ticket into the city computer system and the court administrator who failed to clear the arrest warrant after Kahlich posted bond. However, the city had policies and procedures in place in regard to these duties. Viewing the facts in the light most favorable to Kahlich, at most these employees failed to follow proper procedures on those two occasions. However, these singular incidents standing alone are insufficient to establish a pattern of unconstitutional conduct. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).

Kahlich also alleges deliberate indifference in that the city had no policy in effect covering the situation in which an officer acting to execute a facially valid warrant is presented with a clearance form. To establish the city's liability, Kahlich must do more than "point to something the city 'could have done' to prevent the unfortunate incident." City of Canton, 489 U.S. at 392 (citation omitted). Here, the city had a policy of relying on facially valid arrest warrants, and Kahlich offered no evidence that reliance on a facially valid arrest warrant had ever before resulted in an erroneous arrest. We cannot say that Grosse Pointe Farms was deliberately indifferent to the constitutional rights of its citizens.

**C.**

Kahlich also sought recovery on the basis of several state law claims, including gross negligence, false arrest, intentional infliction of emotional distress, assault and battery, malicious prosecution, defamation per se, and abuse of process.

Kahlich named the city as defendant in his claims for defamation per se and abuse of process. Michigan law provides that governmental agencies are immune from tort liability where they are engaged in the exercise or discharge of a governmental function. Mich. Comp. Laws Ann. § 691.1407(1). Furthermore, there is no exception to governmental immunity for intentional torts. Payton v. City of Detroit, 536 N.W.2d 233, 241 (Mich. Ct. App. 1995). The arrest, detention, and prosecution activities here are clearly governmental functions entitled to immunity. See id. at 241-42. Thus, the district court properly granted summary judgment for the city.

Michigan law further extends immunity to the individual defendant employees of the city to the extent the employees acted within the scope of their authority, were engaged in the exercise or discharge of a governmental function, and their conduct did not amount to gross negligence. Mich. Comp. Laws Ann. § 691.1407(2)(a)-(c). Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws Ann. § 691.1407(2)(c).

Despite Kahlich's allegations, neither Zeckzer's placing his name on the parking ticket, nor MacKenzie's failure to cancel the bench warrant amounts to gross negligence. As the district court concluded, MacKenzie was almost certainly negligent in failing to cancel the warrant. However, nothing suggests that either person acted with reckless disregard for potential injury. Kahlich's claim of gross negligence was properly dismissed.

Statutory immunity, however, does not extend to the individual employees accused of intentional torts.  Lavey v. Mills, 639 N.W.2d 261, 268 (Mich. Ct. App. 2001). Nevertheless, the false-arrest claim was also properly dismissed because the defendant officers had probable cause to arrest Kahlich.  Lewis v. Farmer Jack Div., Inc., 327 N.W.2d 893, 894 (Mich. 1982).  The claim for assault and battery fails because the officers used reasonable force to effect a lawful arrest.  See Brewer v. Perrin, 349 N.W.2d 198, 202 (Mich. Ct. App. 1984).  Likewise, the district court also correctly granted the individual defendants summary judgment on the claim of malicious prosecution because there was probable cause to issue the original ticket and later arrest Kahlich.  See Payton, 536 N.W.2d at 242.

Kahlich's claim for intentional infliction of emotional distress also fails because the conduct alleged was not "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'"  Lewis v. LeGrow, 670 N.W.2d 675, 689 (Mich. Ct. App. 2003) (citation omitted).

The abuse-of-process claim fails because the defendants did not commit an irregular act in the use of process.  Friedman v. Dozorc, 312 N.W.2d 585, 595 (Mich. 1981).  Under the city ordinance, the parking ticket should have been issued as a misdemeanor. Correcting this charge does not qualify as an irregular act.

The defamation-per-se claim fails because, among other things, Kahlich failed to "specifically" plead to whom the individual defendants published the allegedly defamatory statements. Gonyea v Motor Parts Fed. Credit Union, 480 N.W.2d 297, 299 (Mich. Ct. App. 1991).  Additionally, the claim fails to the extent any publication was within the individual

defendants' scope of authority.  See Mich. Comp. Laws Ann. § 691.1407(2)(a).  Kahlich

has not alleged recklessness or malice and thus the individual defendants are entitled to

statutory immunity.  See Mich. Comp. Laws Ann. § 691.1407(2)(c).  Furthermore, Kahlich

failed to present any evidence suggesting that the individual defendants were not entitled

to an absolute, or qualified privilege.  See Hall v. Pizza Hut of Am., Inc., 396 N.W.2d 809,

813 (Mich. Ct. App. 1986).

### III.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.