*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0258p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

AUNDREY MEALS, Individually and as wife and next friend of James Harvey Meals, deceased, and as natural parent, guardian and next friend of William Meals, a minor child,

       *Plaintiff-Appellee,*

 *v.*

CITY OF MEMPHIS, TENNESSEE (05-5974) and BRIDGETTE KING (05-5953),

       *Defendants-Appellants.*

Nos. 05-5953/5974

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 03-02077—Jon Phipps McCalla, District Judge.

Argued: July 21, 2006

Decided and Filed: July 11, 2007

Before: KENNEDY and DAUGHTREY, Circuit Judges; ADAMS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Jean E. Markowitz, LAW OFFICES OF THOMAS E. HANSOM, Memphis, Tennessee, Robert D. Meyers, KIESEWETTER, WISE, KAPLAN, PRATHER PLC, Memphis, Tennessee, for Appellants. Jason G. Whitworth, LAW OFFICE OF J. HOUSTON GORDON, Covington, Tennessee, for Appellee. **ON BRIEF:** Jean E. Markowitz, Thomas Edward Hansom, LAW OFFICES OF THOMAS E. HANSOM, Memphis, Tennessee, Robert D. Meyers, Amber Isom-Thompson, KIESEWETTER, WISE, KAPLAN, PRATHER PLC, Memphis, Tennessee, for Appellants. Jason G. Whitworth, LAW OFFICE OF J. HOUSTON GORDON, Covington, Tennessee, for Appellee.

---

[*] The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

---

**OPINION**

---

JOHN R. ADAMS, District Judge.  This high-speed police pursuit case deals with the "shocks the conscience" standard set forth in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), and its application to the police pursuit in this case.

Appellant Bridgette King ("Officer King") is employed as a police officer by appellant City of Memphis, Tennessee ("the City").  Appellee Audrey Meals, individually and as wife and next friend of James Harvey Meals, deceased, and as natural parent, guardian and next friend of William Meals, a minor child, filed a complaint against Officer King and the City under 42 U.S.C. § 1983 alleging, *inter alia*, deprivation of the Fourteenth Amendment substantive due process rights of her family in causing their death or personal injuries as the result of a police pursuit for a traffic violation.  The district court denied the City's motion for summary judgment as to appellee's § 1983 claim for violation of the Fourteenth Amendment and her state law claim for negligence.  The district court subsequently denied Officer King's motion for summary judgment both as to appellee's § 1983 claim for violation of the Fourteenth Amendment and also her claim of qualified immunity.  For the reasons that follow, we reverse the district court's denial of qualified immunity to Officer King and denial of summary judgment to the City on the § 1983 claim for violation of the Fourteenth Amendment.

*PROCEDURAL AND FACTUAL BACKGROUND*

On January 18, 2002, James Albert Meals[1] was driving his 1995 Mercury Grand Marquis southbound on Covington Pike in the City of Memphis with James Harvey Meals and eight-year-old William Meals riding as passengers.

At approximately 6:30 in the evening, Officer King was running radar on Raleigh-LaGrange Road in Memphis when she saw a 1972 Oldsmobile Cutlass, driven by John M. Harris, pass her going in the opposite direction at a high rate of speed.  Officer King turned her blue lights on and turned her police vehicle around by executing a U-turn, then turned the blue lights off and began following Mr. Harris's vehicle -- without audible (siren) or visual (blue lights) signals -- with the intent of stopping him for speeding.[2]  Mr. Harris did not stop and increased his speed.  Officer King pursued him.[3]

Witnesses Charlie McWharter and Tammy Rarer were stopped at a gas station on the corner of Raleigh-LaGrange and Covington Pike when they witnessed an older model Oldsmobile Cutlass traveling at high speed down Raleigh-LaGrange.  Both witnesses saw a marked City of Memphis police vehicle, driven by Officer King, chasing the Oldsmobile just prior to the cars reaching the intersection.

---

[1] James Albert Meals was the father of James Harvey Meals and the grandfather of William Meals.  No claim has been brought on his behalf.

[2] Officer John Davenport testified that Officer King said "she was just running radar, and she was going to attempt to catch up with the guy and make a traffic stop."  (JA 583)

[3] The parties dispute whether Officer King was in pursuit of Mr. Harris.  According to the appellee, the only distinction between following and pursuing is that an officer does not engage lights and siren as required by the City's police pursuit policy.  *See* JA 980.

Mr. Harris then turned from Raleigh-LaGrange Road north onto Covington Pike, a busy commercial street. Neither Officer King nor Mr. Harris stopped at the intersection. Instead, they both traveled through it at high speed. Mr. Harris was traveling east in the westbound lanes of Raleigh-LaGrange when he initially entered the opposing southbound lanes of traffic on Covington Pike before crossing the grass median into the correct lanes for northbound traffic. Mr. Harris continued at high speed up Covington Pike.

James E. Bradley II was at the intersection of Stage Road and Covington Pike. He saw the police vehicle, driven by Officer King, pass through the same green light cycle as the Oldsmobile Cutlass, driven by Mr. Harris, and within seconds behind it. Mr. Harris left the northbound lane, grazing another vehicle, and crossed into the southbound lanes striking nearly head-on the vehicle in which James Harvey Meals and William Meals were passengers. James Harvey Meals, James Albert Meals, and Mr. Harris were killed in the collision. William Meals suffered a fractured spine resulting in permanent paraplegia as a result of the incident.

The City had a restrictive written policy that specifically addressed police vehicle operation and pursuit policy. (JA 653) That policy prohibited vehicle pursuits when: (1) the officer knows that the suspect is wanted only for a traffic violation, a misdemeanor, or a non-violent felony; (2) the officer has failed to obtain supervisory approval within one minute of pursuit origination; (3) the pursuit has reached an unacceptable level, as defined in the policy; and (4) the officer fails to activate audible (siren) and visual (blue lights) signals upon initiation of a pursuit. (JA 658-59)

Regarding discontinuing the pursuit, the policy provided that officers involved in a pursuit must continually question whether the seriousness of the violation reasonably warrants continuation of the pursuit, and that a pursuit must be discontinued when there is a clear danger to the pursuing officers or the public. (JA 661) As an example, the policy called for discontinuance "[w]hen the speeds dangerously exceed normal traffic flow or when pedestrians or vehicular traffic necessitates unsafe maneuvering of the vehicle." *Id.*

Appellee filed a complaint against the City, Officer King, Walter Crews (Director of the City of Memphis Police Department), and Ford Motor Company in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis, and the defendants then removed the case to the U.S. District Court for the Western District of Tennessee at Memphis based on federal question jurisdiction.

The district court dismissed all of the claims against Officer King (JA 247) and subsequently held a *Daubert*[4] hearing that included testimony by Dennis Waller -- the appellee's expert on police policy, practice, and procedure. (JA 787) The district court later granted in part the City's motion to exclude Mr. Waller's testimony, finding:

> that [the] expert may [not] testify as to the perceptions of Mr. Harris himself or the effect of the alleged pursuit on Mr. Harris' state of mind. In particular, the Court finds that the following opinion from Mr. Waller must be excluded from testimony at trial:
>
> > The Pursuit was conducted in a reckless manner that exacerbated the reckless behavior of Mr. Harris. The continued pursuit of the Harris vehicle by Officer King was a significant causal factor in the increasingly reckless driving behavior of Mr. Harris.

---

[4] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

(JA 341-42) The order granting Officer King's motion to dismiss was subsequently withdrawn by the district court, the appellee's claims against Officer King were reinstated in light of new evidence proffered by appellee, and the case was reset for jury trial.

Appellee filed an amended complaint, alleging that the high-speed police pursuit of Mr. Harris and the subsequent motor vehicle collision violated the Fourth and Fourteenth Amendment rights of James Harvey Meals and William Meals. She alleged that Officer King violated the Fourteenth Amendment's guarantee of substantive due process by causing death or injury through deliberate or reckless indifference to life in a high-speed automobile chase. Appellee also contended that the City is liable under Tennessee law because Officer King's implementation or failure to adhere to the City's police pursuit policy was negligent. According to the appellee, the City's failure to properly train, supervise, and enforce the implementation of the policy was also negligent.

The City filed a motion for summary judgment, which the district court granted in part as to the appellee's claims regarding Director Crews (in his official capacity) and those claims under § 1983 alleging violation of the Fourth Amendment.[5] The trial court denied the City's motion as to appellee's § 1983 claim for violation of the Fourteenth Amendment. (JA 95) The district court stated:

> Plaintiffs assert that Defendant City of Memphis failed to appropriately train its officers with respect to high speed pursuits and that Defendant City of Memphis committed a constitutional violation through the execution of its pursuit policy. Plaintiffs point to evidence in the record in support of this contention, including the expert report and testimony of Plaintiffs' expert Dennis Wall[er]. Defendant City of Memphis has introduced countervailing evidence, including the expert report of Ken Katsaris. As a result, there are disputed issues of material fact regarding Plaintiffs' constitutional claim against Defendant City of Memphis.

(JA 101).

The district court also denied the City's motion as to appellee's claim for negligence under Tennessee law. The trial court found the facts were controverted regarding whether it was reasonable for Officer King to initiate and continue the high-speed pursuit of Mr. Harris and whether her conduct was the proximate cause of the injuries. (JA 102-106) It also found that the City was not entitled to immunity from suit under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-205(2). (JA 106-108) Finally, the district court found that the City was not entitled to immunity for discretionary functions within the meaning of the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-205(1) as to the claims regarding the police pursuit policy. (JA 108-10)

Officer King subsequently filed a motion to dismiss or, in the alternative, for summary judgment. (JA 521) Four unsworn statements (JA 595, 597, 599, 634), an accident report (JA 647), and a set of police policies and procedures (JA 653) were attached to the memorandum in opposition. The district court granted Officer King's motion as to the appellee's claims under § 1983 for violation of the Fourth Amendment and the Tennessee Constitution, and for loss of consortium. The trial court also granted Officer King's motion as to the claim for negligence pursuant to Tennessee law because the appellee had elected to pursue this claim against the City. (JA 120-21) The district court, however, denied Officer King's motion as to the appellee's § 1983

---

[5] Appellee agrees that the Fourth Amendment is not implicated in police pursuit claims because a police pursuit or an unintentional collision does not amount to a "seizure." *See Lewis*, 523 U.S. at 844; *accord Scott v. Harris*, 550 U.S. ----, 127 S.Ct. 1769 (2007).

claim for violation of the Fourteenth Amendment and on the basis of qualified immunity. The district court found that:

> Plaintiff has pointed to sufficient evidence in the record which, if proven true at trial, would prove that Defendant King violated Memphis Police Department policies and procedures by initiating and continuing the chase in a way that shocked the conscience.

(JA 118)  Furthermore, the trial court stated:

> The Court finds that Defendant King is not entitled to summary judgment on the basis of qualified immunity for the same reasons that the Court has denied Defendant King's motion for summary judgment as to the Fourt[eent]h Amendment claim. A showing that Defendant King violated Memphis Police Department policies and procedures by initiating and continuing the chase in a way that shocked the conscience, as alleged by Plaintiffs, would evidence a violation of Plaintiffs' rights under the Fourt[eent]h Amendment. Furthermore, the Court finds that the right to be free from a police pursuit that shocks the conscience is clearly established and that a reasonable police officer would know that such action violates that right.

(JA 120)  These interlocutory appeals followed.

### *INTERLOCUTORY APPELLATE JURISDICTION*

We must first determine whether we have jurisdiction to consider the issues raised on this interlocutory appeal by Officer King and the City. *See Frantz v. Village of Bradford*, 245 F.3d 869, 871 (6th Cir. 2001). Appellee agrees with Officer King and the City that this Court has jurisdiction to decide Officer King's qualified immunity appeal. Appellee submits, however, that this Court does not have jurisdiction over the issue of the City's liability for its failure to train. (Br. 1) However, the City is not seeking review of the appellee's failure to train claim. Instead, the City is seeking review of whether Officer King committed a constitutional violation. City's Reply Br. at 1.

Typically, 28 U.S.C. § 1291 bars our review of interlocutory appeals, but there is an exception where the district court has denied a claim of qualified immunity to government officials on summary judgment. *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985). This exception, however, is a narrow one. In hearing a qualified immunity appeal, an appellate court must be careful to limit its consideration to only those issues over which it has jurisdiction. *See Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998). A denial of a claim of qualified immunity is immediately appealable only if the appeal is premised not on a factual dispute, but rather on "neat abstract issues of law." *Johnson v. Jones*, 515 U.S. 304, 317 (1995) (citations and quotation marks omitted); *see Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007) (clarifying standard). Accordingly, a defendant is required to limit her argument to questions of law premised on facts taken in the light most favorable to the plaintiff. In order for this court to exercise jurisdiction, the defendants' appeals must be premised on evidence viewed in the light most favorable to the plaintiff and they must contend that, viewing the evidence in that light, it fails to demonstrate violation of a clearly-established constitutional right.

Where qualified immunity is denied due to a lingering question of whether the evidence supports a finding that particular offensive conduct occurred, we would lack appellate jurisdiction because the qualified immunity determination of whether a constitutional violation took place is inextricably linked to the merits of the underlying action. *See Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). Therefore, on interlocutory appeal of a denial of qualified immunity, an appellate court

may not consider factual disputes and is limited to addressing only legal issues that are completely separable from all other issues in the litigation.

A city is not entitled to claim qualified immunity, *Owen v. City of Independence*, 445 U.S. 622, 650 (1980), and thus may not normally appeal the district court's denial of summary judgment as to it. The Supreme Court has cautioned that there is no general appellate jurisdiction to consider issues related to claims that are capable of interlocutory appeal. *See Swint v. Chambers County Comm'n*, 514 U.S. 35, 50-51 (1995). We may consider only such issues as are "inextricably intertwined" with the qualified immunity analysis. *Mattox v. City of Forest Park*, 183 F.3d 515, 523-24 (6th Cir. 1999). To the extent the issues raised in the City's appeal are "inextricably intertwined" with the question of qualified immunity of Officer King, and review of those issues is necessary for meaningful review of her claim of qualified immunity, we have pendent jurisdiction over them. Should the appellee establish that Officer King committed a constitutional violation, then she may also be able to establish liability as to the City. More importantly, if we conclude that Officer King committed no constitutional violation, then the City is *not* liable under § 1983 on appellee's theory. Therefore, we will exercise jurisdiction over the City's appeal.

## *DISCUSSION*

To state a claim under 42 U.S.C. § 1983, a plaintiff must present facts sufficient to show that the defendants, acting under color of state law, deprived him of a specific right or interest secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). In the present case, there is no question but that the death of James Harvey Meals and the personal injuries suffered by William Meals constitute an invasion of a constitutionally protected interest. *Tennessee v. Garner*, 471 U.S. 1, 9 (1985) (fundamental interest in own life need not be elaborated on). There is also no dispute that Officer King was acting under color of state law. Rather, the question is whether, during the pursuit of Mr. Harris, Officer King violated any constitutional rights enjoyed by James Harvey Meals and William Meals.

Section 1983 is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced. *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Our first task, therefore, is to identify the specific constitutional or statutory rights allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 394 (1989). In this case, the appellee has alleged a deprivation of the substantive due process rights of James Harvey Meals and William Meals under the Fourteenth Amendment of the United States Constitution. We analyze the claim to determine whether, viewing the evidence most favorable to her, she has presented evidence of an actual violation.

Officer King argues that it was error for the district court to consider the unauthenticated documents and unsworn statements attached to the appellee's memorandum in opposition to her motion for summary judgment because they do not meet the requirements of Fed. R. Civ. P. 56(e). Furthermore, Officer King contends that the record evidences that there was no constitutional violation, and even if there were, there was no clear law upon which she could determine that the actions that she took were unlawful. As such, she contends that she was entitled to summary judgment on the basis of qualified immunity.

Appellee makes two arguments[6]: first, that the City's pursuit policy and all witness statements were properly authenticated in the record for consideration by the district court, and,

---

[6] Appellee also argues that the district court properly denied summary judgment to the City as to her § 1983 claim for violation of the Fourteenth Amendment because it failed to properly train and supervise its police officers on high-speed police pursuits. We will not address this argument because the City has not appealed that aspect of the order.

second, that the district court properly denied summary judgment to Officer King on the issue of qualified immunity because she was not performing a discretionary function and violated well-established substantive due process rights by her intentional misuse of a police vehicle in a pursuit for reasons other than legitimate purposes of law enforcement in violation of police regulations and state law. According to the appellee, here as in *Checki v. Webb*, 785 F.2d 534 (5th Cir. 1986), the trier of fact will have to determine whether Officer King crossed the constitutional line that would make her pursuit actionable under § 1983.

## A.  *Standard of Review*

The parties agree that the standard of review for both the district court's denial of Officer King's motion for summary judgment regarding the § 1983 claim for violation of the Fourteenth Amendment and the City's motion for summary judgment regarding the § 1983 claim is *de novo*. *McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004). Thus, we review *de novo* a decision denying summary judgment on the grounds of qualified immunity because, as we have noted, "the issue whether qualified immunity is applicable to an official's actions is a question of law." *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996).

## B.  *The City's Police Pursuit Policy and the Witness Statements*

Officer King argues that it was error for the district court to consider the unauthenticated documents and unsworn statements in ruling on her motion for summary judgment. We agree with the appellee's assertion that the City's police pursuit policy and the witness statements were properly authenticated in the record for consideration by the district court.

The City's written vehicle pursuit policy (JA 653) was authenticated and discussed at length during the deposition of Inspector Bobby E. Todd. (JA 887, 892) It was also acknowledged and discussed by Officer King at her deposition. (JA 920, 963) Finally, the pursuit policy was authenticated by Raymond H. Hopkins and attached as an exhibit to his affidavit filed by the City. (JA 279, 282)

The entire police investigative file and accident report, including all witness statements, was authenticated and made an exhibit at Sgt. Reginald Copeland's deposition. He was the officer responsible for generating and putting the documents together. (JA 983, 984-1163) Officer King read her unsworn statement into the record during her deposition. (JA 942-46, 972) Likewise, Sgt. Robert Skelton read his statement (JA 634) into evidence at his deposition. (JA 910-12, 914) Mr. Bradley's unsworn statement (JA 597) was adopted by him in an affidavit, albeit three days after the district court entered a ruling on Officer King's motion. (JA 708-11)

## C.  *Qualified Immunity*

Officer King contends that she is entitled to qualified immunity on the appellee's Fourteenth Amendment claim. Qualified immunity protects officials from liability when a reasonable official in the defendant's position would not have understood his or her actions to violate a person's constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Under the doctrine of qualified immunity, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818.

The Court of Appeals for the Sixth Circuit has established a three-step test for evaluating qualified immunity defenses. In *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003), the Sixth Circuit stated the three-part test as follows:

> Qualified immunity involves a three-step inquiry. First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996)); *see also Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

If the plaintiff fails to establish any one of these elements, qualified immunity must be granted. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005).[7]

As of January 18, 2002, it was clearly established that a police officer's conduct during the course of a high-speed pursuit could violate the substantive due process rights of persons injured during the pursuit. The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment includes within its boundary "protection of the individual against arbitrary action of government." *Lewis*, 523 U.S. at 845 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). In reviewing exercises of executive power, however, we must bear in mind that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense'" thus amounting to a violation of constitutional dimensions. *Id.* at 846 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)).

A § 1983 claim may be brought against a police officer under the Fourteenth Amendment for death or injury to innocent third parties where the injury results from the pursuit. *Lewis*, 523 U.S. at 845-49. To prevail on such a claim, a plaintiff must prove that the police officer's conduct "shocks the conscience." *Id.* at 846-47. In *Lewis*, the Supreme Court significantly restricted, but did not foreclose, the right to recover damages for constitutional violations stemming from police pursuits. "[O]nly a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Id.* at 836. "[H]igh-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Id.* at 854.[8]

The flaw in the district court's ruling in this case is its failure to apply the standard enunciated in *Lewis*. In denying summary judgment to the City on the appellee's state law claim, the district court noted that the plaintiffs did *not* claim that Officer King acted intentionally. (JA 107) Indeed, if the appellee had done so, the City would have been entitled to summary judgment on appellee's state law claim because it would not be liable for such an intentional act. Most significantly, the appellee is unable to point to any evidence that establishes the required intent to

---

[7] The Supreme Court announced a two-step inquiry for evaluating qualified immunity claims in *Saucier*. The Sixth Circuit explained in *Sample v. Bailey*, 409 F.3d 689 (6th Cir. 2005), however, that its "three-step approach correctly encompasses the Supreme Court's approach to qualified immunity claims and serves to ensure government officials the proper protection from civil suit under the law." *Id.* at 696 n.3.

[8] As an alternative theory, the appellee submits that this is an appropriate case to apply the "deliberate indifference" standard, discussed in *Lewis*, 523 U.S. at 851, to Officer King's conduct because actual deliberation on her part was practical. (Br. 32-34) We do not agree. *Epps v. Lauderdale County, Tennessee*, 45 Fed.Appx. 332, 333-34 (6th Cir. 2002); *see also Helseth v. Burch*, 258 F.3d 867, 871 (8th Cir. 2001) (en banc) ("[T]he intent-to-harm standard of *Lewis* applies to all § 1983 substantive due process claims based upon the conduct of public officials engaged in a high-speed automobile chase aimed at apprehending a suspected offender," regardless of whether the chase conditions arguably afforded pursuing officers time to deliberate.).

harm. It is clear from the record that Officer King did not intentionally cause Mr. Harris's vehicle to crash. Moreover, Officer King argues persuasively that even when the facts are viewed in the light most favorable to the appellee, they do not meet the shocks-the-conscience test. Although the police expert, Mr. Waller, opined that the pursuit reached an unacceptable level when Mr. Harris crossed into oncoming traffic when he first turned onto Covington Pike, and despite the fact that Officer King violated the police pursuit policy, the record does not establish that Officer King intended to harm the occupant of the vehicle being pursued -- or the victims of her actions. In an attempt to demonstrate otherwise, the appellee relies on *Checki*, *supra*, a case in which there was an issue of fact as to whether the pursuing officer was motivated by ill will. 785 F.2d at 538. There is, however, no such issue of fact suggested in this case.

Appellee argues that Officer King's violation of the City's police vehicle operation and pursuit policy raises a disputed question of fact as to whether she acted with malice toward Mr. Harris and with intent to worsen his legal plight which "shocks the conscience" under the standard set forth in *Lewis*, *supra*. (Br. at 29-30) However, there is no evidence that Officer King committed any acts intended to harm Mr. Harris. "[I]n the absence of evidence from which a jury could infer a purpose to cause harm unrelated to the legitimate object of the chase, the evidence does not satisfy the requisite element of arbitrary conduct shocking the conscience." *Davis v. Township of Hillside*, 190 F.3d 167, 169 (3rd Cir. 1999).

We are therefore compelled to conclude, despite the tragic results stemming from Officer King's violation of the City's policy, that the facts in the present case do not make out a substantive due process violation under *Lewis*, *supra*. Because Officer King did not violate the constitutional rights of James Harvey Meals and William Meals, there is no basis with which to hold the City liable for the conduct of Officer King under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) (in the absence of a constitutional violation by the individual defendants, municipal liability claim is foreclosed); *Epps*, 45 Fed.Appx. at 334.

### *CONCLUSION*

For the reasons set out above, we REVERSE the district court's denial of qualified immunity. We also use our discretionary power of pendent appellate jurisdiction to exercise jurisdiction over the denial of summary judgment to the City on the § 1983 claim for violation of the Fourteenth Amendment. Because the appellee has not shown that Officer King committed a constitutional violation, the district court's denial of summary judgment to the City is likewise REVERSED. The case is REMANDED with directions to dismiss the action with regard to Officer King and for further proceedings consistent with this opinion.