NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0739n.06

No.  12-1480

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
*Aug 09, 2013*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| DAVID GOTTAGE, | ) |
| | ) |
|     Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| JOHN ROOD, JACK LATOUR, MICHAEL | ) |
| NOTORLANO, and CHRISTOPHER PERIATT, | )    ON APPEAL FROM THE UNITED |
| | )    STATES DISTRICT COURT FOR |
|     Defendants-Appellants. | )    THE EASTERN DISTRICT OF |
| | )    MICHIGAN |
| CITY OF ST. CLAIR SHORES, | ) |
| | ) |
|     Defendant. | ) |

Before:  KETHLEDGE, WHITE, and STRANCH, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.**  Defendant police officers appeal the district court's

denial of qualified immunity on excessive-force claims brought under 42 U.S.C. § 1983 and a state-

law claim of assault and battery.  Because Defendants contest Plaintiff Gottage's version of the facts

and that version is not contradicted by the record, this court lacks jurisdiction over this interlocutory

appeal except to address the single purely legal issue Defendants raise—whether Gottage's plea of

no contest to resisting and obstructing arrest forecloses his excessive-force claim.  The district court

properly determined that it did not, and we AFFIRM that determination.

## I.  Plaintiff's Version of the Facts

After drinking alcohol and taking Vicodin for several days, David Gottage fired a shotgun

into the ground behind his father's house in the early morning of June 4, 2008.  Gottage walked back

into the house after discharging the shotgun and pointed it at his nephew, Ryan Muysenberg. Muysenberg called the police twice. The first call was anonymous, reporting that "some man outside this address [] shot a weapon and . . . looked drunk." During the second call, Muysenberg identified himself and stated that Gottage was intoxicated, had pointed a gun at Muysenberg, pointed a gun at his dog, threatened to shoot persons who came to the house, and that there were multiple guns in the house. Muysenberg drove to the police department and provided two written statements, one at 7:48 that morning, and the second after Gottage's arrest.

The first police officers to respond to the scene spoke with Gottage through a bathroom window while Gottage showered. Gottage denied them entrance to the house, stating that they would need a warrant. Gottage testified that after that, he "passed out" because he was hung over and "still had booze in him." Page ID (PID) 973.

Defendants are members of the St. Clair Shores Police Department's Emergency Response Team (ERT) who arrived at the residence shortly after 8:20 a.m. in an armored-transport vehicle. ERT personnel repeatedly attempted to make contact with Gottage via loudspeaker and telephone, but were unsuccessful.

David Labeau, a neighbor and witness to the events, testified on deposition that he told officers that Gottage was not responding to the phone or loudspeaker because he was likely passed out from drinking the night before. Labeau told officers that Gottage is a very deep sleeper and cannot be awakened after he has been drinking. PID 1050. Labeau also testified that he offered to go in and get Gottage because he had a key to the front door. PID 1052.

Around 2:00 p.m., ERT members fired CS tear-gas canisters into the house. Gottage testified that he awoke to the loud tear-gas explosions and "got out of there quick," going out the front door to the porch "unarmed, with hands in the air." PID 974. Gottage testified that Defendants Rood, LaTour, and Notorlano immediately rushed at him, yelling for him to get down on the ground. Because there was not enough room on the porch for him to lie down, Gottage turned toward the step off the porch, intending to comply with the commands to get down on the ground. "I couldn't get down or else I would have – that's what I was trying to do it I was trying to take a step down to get down because there's not much porch there when you come out the door." PID 979,1033-34, 1045, 1048.

Before Gottage could comply with the directives to get on the ground, he was tackled from behind by Rood, LaTour, and Notorlano. He testified, "I had my hands up. I went to take a step off the porch to get down because they're running at me and . . . they just lifted me up. My feet were off the ground and they took my face into the concrete." PID 978. Gottage testified that the officers put their hands on his head and rubbed both sides of his face in the cement. PID 988-89. He testified that he felt either an elbow or a gun butt to the side of his left face while he was being held down. PID 990.

Labeau testified that after the officers took Gottage off the porch, they mashed his face into the cement, and that there was a large blood stain in the driveway after the altercation. PID 1044, 1048. Medical records submitted below indicate that Gottage sustained a broken nose, injuries to his left arm and shoulder, black eyes, facial scabs and cuts, abrasions on his legs, and bruises on his back.

## II. Defendants' Version of the Facts

Defendants do not concede Gottage's version of the facts:

Gottage exited the residence through the front door and stepped out onto the front porch. . . . As [the closest ERT members] moved toward Gottage, the ERT officers gave verbal commands directing Gottage to exit the residence and get down on the ground face first. Gottage did not comply. He became argumentative, demanding to know why officers were on his property. Gottage turned suddenly to his right and walked away from the approaching officers. Gottage moved from the porch to the driveway . . . [where the officers] tackled Gottage from behind onto the ground.

The officers testified that when Gottage disregarded their directive to "get on the ground" he escalated an already volatile situation. Gottage was known to have access to weapons. When Gottage turned his back, the officers could no longer observe his hands.

Defs.' Br. at 14–15 (internal citations omitted).

While Defendants contend that Gottage refused directives to get down on the ground and that tackling him was thus necessary and appropriate, Gottage testified that he was not given time to comply with the ERT officers' commands.

While Defendants maintain that Gottage was argumentative, Gottage and Labeau testified that Gottage said nothing. Defendants further maintain that Gottage vigorously resisted the officers' efforts to restrain him, while Gottage (and Labeau) testified that Gottage did not resist.

## III. Jurisdiction

The district court's denial of qualified immunity is an appealable final decision under 28 U.S.C. § 1291 only to the extent that it turns on an issue of law. *Kennedy v. City of Cincinnati*, 595 F.3d 327, 333 (6th Cir. 2010). "A defendant raising a qualified immunity defense 'may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial

record sets forth a 'genuine' issue of fact for trial.'" *Id.* (quoting *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995).) "[T]he defendant must . . . be willing to concede the most favorable view of the facts to the plaintiff," *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998), and "limit his argument to questions of law premised on facts taken in the light most favorable to the plaintiff," *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 538 (6th Cir. 2008). We may not disregard the plaintiff's version of the facts unless plainly contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (where facts alleged by one party are "blatantly contradicted" by the record and no reasonable jury could believe them, the court should not adopt those facts for summary judgment); *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 493 (6th Cir. 2012) (facts alleged that were blatantly contradicted by videotape evidence not adopted).

**A.**

Defendants argue that there was no constitutional violation, i.e., that their use of force during the takedown and handcuffing was objectively reasonable because Gottage refused police directives to get down on the ground and resisted being restrained. Defendants' contention that they raise only a purely legal issue[1] ignores that they must "'concede the most favorable view of the facts to the plaintiff for purposes of the appeal' and limit [their] argument to questions of law premised on facts taken in the light most favorable to the plaintiff." *Phillips*, 534 F.3d at 538 (quoting *Berryman*, 150 F.3d at 563); *Thompson v. Grida*, 656 F.3d 365, 367 (6th Cir. 2011) (noting that "[w]hen the legal

---

[1]Defs.' Br. at 1.

arguments advanced rely entirely on a defendant's own disputed version of the facts, the appeal boils down to issues of fact and credibility determinations that we cannot make").

Where a district court denies qualified immunity "due to a lingering question" whether the evidence supports a finding that particular offensive conduct occurred, this Court lacks appellate jurisdiction because the determination "whether a constitutional violation took place is inextricably linked to the merits of the underlying action." *Phillips*, 534 F.3d at 538 (quoting *Meals v. City of Memphis*, 493 F.3d 720, 727 (6th Cir. 2007)). Accordingly, we lack jurisdiction to consider Defendants' arguments that there was no constitutional violation. The same goes for Defendants' argument that the district court erred in denying Defendant Rood summary judgment on Gottage's state-law claim of assault and battery. Whether Rood's actions constituted the torts of assault and battery also requires resolution of facts to determine whether Rood used reasonable force against Gottage. *See Johnson v. City of Lincoln Park*, 434 F. Supp. 2d 467, 481 (E.D. Mich. 2006) (citing *Kahlich v. City of Grosse Pointe Farms*, 120 F. App'x 580, 586 (6th Cir. 2005)). Thus, the district court properly determined that disputed issues of fact precluded summary judgment in Rood's favor.

**B.**

We have jurisdiction to consider the only pure legal issue Defendants advance—that Gottage's no-contest plea to resisting arrest[2] precludes his excessive-force claim. The district court

---

[2]Gottage pleaded no contest in state court to resisting, obstructing, and assaulting Officer Rood. For the factual basis of the plea, the parties stipulated to enter Exhibit 1, which reads in relevant part, "Once outside, susp failed to follow ofcs commands, and was taken to the ground. He fought w/ ofcs, refusing to be handcuffed. Ofcs. finally handcuffed susp & took him to [St. Clair Shores Police Department]." PID 821. Defendants assert that the factual basis of the no-contest plea, including the statement that Gottage "fought w/ [officers], refusing to be handcuffed,"

No. 12-1480
*Gottage v. Rood, et al.*

rejected this argument, stating "under recent Sixth Circuit authority, Plaintiff's no contest plea to resisting arrest does not preclude him from advancing an excessive force claim based on that arrest. *See Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010); *Karttunen v. Clark*, 369 F. App'x 705 (6th Cir. 2010)." R. 64 at 11.

We agree with the district court. In *Schreiber*, this court observed:

> The district court . . . found Schreiber's § 1983 claim of excessive force to be barred by *Heck v. Humphrey*, 512 U.S. 477 [] (1994), because Schreiber had already been convicted in state court for attempting to resist his arrest. We disagree.
>
> In *Heck*, the Supreme Court held that
>
> > in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.
>
> *Id*. at 486–87 []. Schreiber's conviction has not been reversed, so the question is whether his § 1983 suit is an attempt to invalidate that conviction. The district court reasoned that because "the altercation between Schreiber and Officer Moe gave rise to both the conviction and the excessive force claim," [] the § 1983 suit constituted an effort to invalidate the conviction. Our case law, however, requires a more precise inquiry whereby "the court must look both to the claims raised under § 1983 and to the specific offenses for which the § 1983 claimant was convicted." *Swiecicki v.*

---

evidences Gottage's resistance and makes the force Defendants applied objectively reasonable. Defs.' Br. at 32. Evidence that Gottage resisted arrest would support Defendants' reasonableness defense. But the success of that defense requires determination of other relevant facts (e.g., the degree of force actually used by the officers), a task for the trier of fact. Additionally, Gottage's plea to resisting and obstructing is only relevant to the reasonableness of force used *after* Defendants tackled Gottage and the officers attempted to handcuff him. Gottage claims not only that the force employed while handcuffing him was excessive, but also that the officers applied excessive force when they forced him to the ground.

*Delgado*, 463 F.3d 489, 493 (6th Cir. 2006), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 [] (2007). The mere fact that the conviction and the § 1983 claim arise from the same set of facts is irrelevant if the two are consistent with one another.

Generally speaking, "a claim of excessive force does not necessarily relate to the validity of the underlying conviction and therefore may be immediately cognizable." *Swiecicki*, 463 F.3d at 493. Indeed, in Michigan, one can be convicted under § 750.81d(1) simply for a "knowing failure to comply with a lawful command," Michigan Compiled Laws § 750.81d(7)(a), and the mere failure of Schreiber to obey a police order would not have made the force Moe allegedly used reasonable. There are two circumstances, however, in which an excessive-force claim might conflict with a conviction. The first is when the criminal provision makes the lack of excessive force an element of the crime. *Cf. Heck*, 512 U.S. at 486 n. 6 []. The second is when excessive force is an affirmative defense to the crime, as was true in the case upon which the district court relied, *Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005) (noting that an assault conviction barred an excessive-force claim because the plaintiff did not raise excessive force as a defense). In both of these circumstances, the § 1983 suit seeks a determination of a fact that, if true, would have precluded the conviction.

Nothing in the text of Michigan Compiled Laws § 750.81d(1) or § 750.92 suggests that the state must prove as an element of the crime that the police did not use excessive force. Indeed, the Court of Appeals of Michigan has found that a lawful arrest is not one of the elements of § 750.81d(1). *People v. Ventura*,[] 686 N.W.2d 748, 752 (2004). Furthermore, one recent Michigan case has strongly suggested that excessive force by the police is not a defense to a resisting-arrest conviction, *People v. Hill*, No. 283951, 2009 WL 1830750, at *3 (Mich. Ct. App. June 25, 2009) (stating that there is no authority for the proposition that the "use of excessive force by police is a valid defense to resisting and obstructing"), and several others have left unresolved the question of whether excessive force is a defense. *See, e.g., People v. Burks*, No. 284467, 2009 WL 1693743, at *2 (Mich. Ct. App. June 16, 2009); *People v. Rauch*, No. 263185, 2006 WL 3682754, *3–4 (Mich. Ct. App. Dec.14, 2006). In light of these state court of appeals decisions, we cannot conclude that any excessive force used by Moe would have provided Schreiber with an affirmative defense to the charge of resisting an arrest.

We conclude that under these circumstances, Schreiber's § 1983 excessive-force claim does not challenge his conviction for attempting to resist his arrest. *See Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 768–70 (E.D. Mich. 2009) (reaching a similar conclusion). The *Heck* doctrine applies only where a

§ 1983 claim would "*necessarily*" imply the invalidity of a conviction. *Nelson v. Campbell*, 541 U.S. 637, 647 [] (2004) (internal quotation marks omitted). "To hold otherwise [would be to] cut off [a] potentially valid damages action[ ] as to which [Schreiber] might never obtain favorable termination—[a] suit[ ] that could otherwise have gone forward had [Schreiber] not been convicted." *Id*. Therefore, Schreiber should be permitted to proceed on his claim that Moe used excessive force during the course of the arrest.

596 F.3d at 334–35. In accord with *Schreiber*, the district court properly determined that Gottage's no-contest plea did not foreclose his excessive-force § 1983 claims.

## IV.

We AFFIRM the district court's determination that Gottage's no-contest plea to resisting arrest does not preclude him from advancing an excessive-force claim based on that arrest. We DISMISS Defendants' remaining arguments for lack of jurisdiction.

No. 12-1480
*Gottage v. Rood, et al.*

KETHLEDGE, Circuit Judge, dissenting. The undisputed facts of this case, as I understand them, are these: the City of St. Clair Shores Police Department received a report that David Gottage had threatened to kill several people, that he was highly intoxicated, and that he had strategically placed guns throughout the house where he was staying. A SWAT team responded to the scene and—after a six-hour standoff—flushed Gottage out of the house with tear gas. When Gottage emerged onto the front porch, the officers ordered him to lie down. Rather than comply, however, Gottage turned his back to the officers and began walking towards where a truck was parked next to an open garage. The officers tackled him on a concrete walkway adjacent to the porch, and in the process of doing so injured Gottage's shoulder. Gottage was injured further as the officers handcuffed him on the ground.

None of this, in my view, makes out a violation of Gottage's clearly established constitutional rights. The Fourth Amendment permits an officer to use a reasonable amount of force when making an arrest. *See Hayden v. Green*, 640 F.3d 150, 154 (6th Cir. 2011). To determine whether an officer's use of force was reasonable, we consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quotation marks omitted). We look at these factors through the eyes "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quotation marks omitted).

All three of these factors support the officers' decision to tackle Gottage. First, the officers had reason to believe that Gottage had committed several serious crimes: they knew that Gottage had fired a shotgun in a residential neighborhood; they knew that Gottage had allegedly pointed a

-10-

shotgun at his nephew and threatened to kill him; and they had every reason to think that Gottage had barricaded himself inside his house for six hours as they tried to contact him. (He was actually passed out inside the house.) The conduct that the officers were facing, therefore, was severe.

Second, the officers reasonably believed that Gottage posed an immediate threat to the safety of themselves and others. Gottage had threatened to kill his nephew and several other people. Gottage also had the ability to hurt others, given that he possessed several firearms. Moreover, Gottage was highly intoxicated, which made it more likely that he would act violently. *See Marvin v. City of Taylor*, 509 F.3d 234, 246 (6th Cir. 2007).

Third, the officers had reason to believe that Gottage was resisting arrest. Despite repeated phone calls and announcements over a loudspeaker, Gottage had failed to exit the house for six hours. Then—when he finally did so—Gottage did not comply with the officers' commands to lie flat on the ground. Instead, Gottage turned his back on the officers and walked toward the driveway, where an unsecured truck and an open garage sat waiting. Taken together, these three factors show that the officers' decision to tackle Gottage was reasonable.

Gottage argues that the officers should not have tackled him because he subjectively intended to comply with their commands by lying down on the driveway. But we look at the facts through the eyes "of a reasonable officer on the scene," *Hayden*, 640 F.3d at 153; and a reasonable officer could not have known that Gottage planned to lie down on the driveway. Thus, "[Gottage's] reason for noncompliance is irrelevant as to whether [the officers] reasonably thought that force was necessary to bring [him] under control." *Griffin v. Hardrick*, 604 F.3d 949, 955–56 (6th Cir. 2010).

Nor does the record support a conclusion that the officers used excessive force when they handcuffed Gottage. Given the situation they faced, the officers needed to handcuff Gottage as quickly as possible, not as gently as possible. Given the situation, it was reasonable for the officers to step on Gottage's back "one or two times" to keep him from getting up, and to pull his arms behind his back to handcuff him.

Gottage contends, however, that the officers acted maliciously. In particular, he says the officers "deliberately rubbed [his face] into the concrete in the driveway from side to side." But Gottage has not explained how he knows that the officers deliberately rubbed his face into the concrete. Gottage admits that he was too intoxicated to remember much of what happened—*see* Gottage Dep. at 185:12–186:14; *id.* at 199:15–22; *id.* at 208:5–16—yet he asserts that he was somehow able to perceive the officers' subjective intent. This self-serving testimony is insufficient to allow a reasonable jury to find for Gottage. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In sum, even viewing the record in the light most favorable to Gottage—in this case, a dim light indeed—the officers' actions were reasonable. I therefore believe the officers are entitled to qualified immunity. For these reasons, I respectfully dissent.