NOT FOR FULL-TEXT PUBLICATION
File Name: 10a0071n.06

**FILED**
**Feb 04, 2010**
LEONARD GREEN, Clerk

No. 08-2310

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

DAVID PICKELHAUPT,

      Plaintiff-Appellee,

v.

ANDREW JACKSON, Warden,
Mound Correctional Facility;
RAYMOND BOOKER, Warden,

      Defendants,

and

CONSTANCE BANKS, in her official
and individual capacities; MONTINA
MALONE, former Acting Classification
Director, in her official and individual
capacities,

      Defendants-Appellants.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
 DISTRICT OF MICHIGAN

BEFORE:  SUHRHEINRICH, COLE, and GILMAN, Circuit Judges.

      **SUHRHEINRICH, Circuit Judge**.  Defendants Constance Banks and Montina Malone,

prison officials at the Michigan Department of Corrections (MDOC), bring this interlocutory appeal

to challenge the district court's decision to deny their motion to dismiss on the basis of qualified

immunity.  We **REVERSE.**

### I.  Background

MDOC policy directives and operating procedures authorize the Classification Director to assign prisoners jobs and to set their wages according to standardized pay scales. MDOC Policy Directive (PD) 05.02.110, "Prisoner Work Assignment Pay and School Stipend," states that "[p]risoners in Correctional Facilities Administration (CFA) who are assigned to work . . . shall be paid . . . for the assignment as set forth in this policy." Prisoners working in a position for which they have provided proof of being currently or previously licensed by a state agency "shall be paid at the third level of the license pay scale."

Plaintiff David Pickelhaupt is an inmate in the custody of the MDOC. He has been incarcerated at the North Ryan Facility (NRF or Mound) since May 15, 1997. In April 2001, Pickelhaupt accepted a position performing physical plant maintenance. The Classification Director at that time, Ava Roby, determined that Pickelhaupt should be paid at the third level of the licensed pay scale, $3.04 per day (plus an additional $0.30 because Pickelhaupt worked in numerous hazardous situations), because he had a state certified mechanics license, a certificate of completion in auto mechanics from a local community college, and over 1000 hours of training.

In April 2005, the new Classification Director, Montina Malone, audited the pay rates for prisoners. She concluded that Pickelhaupt should have been paid the standard pay scale rate of $1.77 per day, not the advanced pay scale rate of $3.04 per day, because he was not using his license in the performance of his prison duties. She reduced his rate accordingly. This reduction occurred without any notice or hearing.[1]

---

[1]Effective, January 1, 2009, Pickelhaupt's wage rate was increased from $1.77 to $3.04 per day.

Pickelhaupt filed a pro se complaint on December 8, 2005, against the NRF. On June 15, 2006, Defendant Andrew Jackson, the Warden at NRF, moved to dismiss the complaint on the ground that Pickelhaupt failed to exhaust his administrative remedies prior to filing suit as required by 42 U.S.C. § 1997e(a). On December 4, 2006, the district court ordered that counsel be appointed, and that Pickelhaupt thereafter have an opportunity to file an amended complaint. On May 25, 2006, Pickelhaupt filed an amended complaint through counsel against Raymond Booker (former warden at NRF), Andrew Jackson (former warden at NRF who retired in 2006), John Jeffries (the current Classification Director at NRF), Ava Roby (the Classification Director at NRF from 2001 to February 2005), Dr. Constance Banks (the School Principal at NRF), and Montina Malone (the Classification Director at NRF from April 2005 to October 2005), alleging that they violated his rights under the Due Process Clause of the Fourteenth Amendment. He also alleged a state-law claim of promissory estoppel. He sought back pay.

Defendants moved for summary judgment, arguing they were entitled to qualified immunity.[2] The magistrate judge recommended that Defendants' motion be granted on the ground that Pickelhaupt had not alleged the violation of a constitutional right because he did not have a property interest in prison employment. The district court adopted the report and recommendation in part and rejected it in part.[3]

---

[2]Originally the parties agreed to dismiss Jeffries and Malone, so the summary judgment motion was filed by Booker, Jackson, Jeffries, Roby, and Banks. Later, the parties agreed to reinstate Malone as a party and to dismiss Roby.

[3]The district court otherwise agreed with the magistrate's recommendations to dismiss the other claims and defendants.

The district court concluded that Pickelhaupt had created a genuine issue of material fact regarding whether he had a protected property interest based on the language of the MDOC policies. Thus, the district court held that "it would have been apparent that procedural due process requires notice and a hearing *before* the deprivation." *Pickelhaupt v. Booker*, No. 05-74660, U.S. Dist. LEXIS, at *7 (W.D. Mich., Sept. 30, 2008) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).

Banks and Malone filed this timely appeal. The district court subsequently issued an order staying the case pending resolution of this appeal.

## II. Appellate Jurisdiction

Initially, we consider our jurisdiction to hear this appeal. It is well settled that an order denying qualified immunity is immediately appealable pursuant to the "collateral order" doctrine if the denial is based on a pure issue of law. *Chappell v. City of Cleveland*, 585 F. 3d 901, 905 (6th Cir. 2009).[4]

## III. Qualified Immunity

Government officials acting within the scope of their authority are entitled to immunity from suit unless their conduct violates the plaintiff's clearly-established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Jones v. Byrnes*, 585 F.3d 971, 974 (6th Cir. 2009) (per curiam). Qualified immunity involves a two-step analysis: First, the court asks whether the official's conduct violated a constitutional right, and if so, the question becomes whether that right was "clearly established" at the time of the violation. *Jones*, 585 F.3d at 975. If the answer to either

---

[4]Defendants have conceded Pickelhaupt's version of the facts so that only a question of law is presented.

question is no, then the official is entitled to qualified immunity. *Id.* The Supreme Court recently made clear in *Pearson v. Callahan*, – U.S. – , 129 S. Ct. 808 (2009), that the courts are free to answer these questions in any order. *See id.* at 813; *Jones*, 585 F.3d at 975.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, procedural due process analysis involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted); *Bazetta*, 430 F.3d at 801. In other words, the question of what process is due is relevant only if the inmate establishes a constitutionally protected interest. *See Wilkinson*, 545 U.S. at 224.

Pickelhaupt claims that he has a constitutionally protected property interest in the wage Roby contracted to pay him based on the authority delegated to the Classification Director in the MDOC policies and regulations. Defendants contend that Pickelhaupt has no such property interest, based on the rule of *Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Supreme Court held that state prison regulations do not create protected liberty interests unless they impose restraints "which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted).

The issue in *Sandin* was whether the prisoners had a right to procedural due process prior to their placement into segregated confinement as punishment for disruptive behavior. The *Sandin* Court noted that some of its earlier cases, particularly *Hewitt v. Helms*, 459 U.S. 460 (1983), used a methodology for identifying state-created interests that emphasized "the language of a particular [prison] regulation" rather than "the nature of the deprivation." *Sandin*, 515 U.S. at 481, 482. The *Sandin* Court criticized this approach because it created a disincentive for states to codify prison management procedures, and it involved the federal courts in the day-to-day managment of prisons. *Id.* at 482-83. The *Sandin* Court therefore rejected the *Hewitt* methodology of parsing the language of particular regulations and stated that the relevant inquiry must focus on the nature of the deprivation imposed on a prisoner, and whether it imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* at 484. *See also Wilkinson*, 545 U.S. at 222 ("After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." (citing *Sandin*, 515 U.S. at 484)).

Under this "refined inquiry," the *Sandin* Court held that the prisoners did not have a liberty interest protecting against a thirty-day assignment to segregated confinement because it did not "'present a dramatic departure from the basic conditions of [the inmate's] sentence.'" *Wilkinson*, 545 U.S. at 222 (quoting *Sandin*, 515 U.S. at 485) (alteration in *Wilkinson*). *Cf. id.* at 224 (holding that prisoners "have a liberty interest in avoiding assignment to [a super-maximum security prison]").

Defendants argue that the *Sandin* test applies equally to both liberty and property interests. The Circuits are split on this question. The Second and Fifth Circuits hold that *Sandin* does not

apply to property interests. *Handberry v. Thompson*, 446 F.3d 335, 353 n.6 (2d Cir. 2006) ("*Sandin*

was concerned with the proper definition of *liberty* interests, not property interests."); *Bulger v. U.S.*

*Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) (remarking that *Sandin* "did not instruct on the

correct methodology for determining when prison regulations create a protected property interest").

On the other hand, the Tenth Circuit has flatly rejected this view, holding that *Sandin* applies

to both liberty and property interests in the prison context:

> [W]e do not see how the Supreme Court could have made clearer its intent to reject
> the *Hewitt* analysis outright in the prison context. Indeed, if we are to avoid *Hewitt's*
> "two undesirable effects" ((1) creating disincentives for states to codify management
> procedures and (2) entangling the federal courts in the day-to-day management of
> prisons) in the context of prison property interests, *Sandin*, 515 U.S. at 482, . . . and
> return the focus of our due process inquiry from "the language of a particular
> regulation" to "the nature of the deprivation" as *Sandin* mandates, *id.* at 481, . . . we
> must conclude that the Supreme Court foreclosed the possibility of applying the
> *Hewitt* methodology to derive protected property interests in the prison conditions
> setting. The Supreme Court mandate since *Sandin* is that henceforth we are to
> review property and liberty interests claims arising from prison conditions by asking
> whether the prison condition complained of presents "the type of atypical significant
> deprivation in which a State might conceivably create a liberty [or property] interest."
> *Id.* at 486.

*Cosco v. Uphoff*, 195 F.3d 1221, 1223-24 (10th Cir. 1999) (rejecting *Bulger*) (footnotes omitted).

*See also Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir.1999) (suggesting but not expressly

holding that *Sandin* applies to property interest claims brought by prisoners); *Abdul-Wadood v.*

*Nathan*, 91 F.3d 1023, 1025 (7th Cir.1996) (same).

Both this Court and the Ninth Circuit have suggested but not directly held that *Sandin* does

not apply to *Hewitt*-type property interests. *See Woodard v. Ohio Adult Parole Auth.,* 107 F.3d 1178,

1182-83 (6th Cir. 1997) (noting "the Supreme Court has made it clear that both state law and the Due

Process Clause itself may create [a liberty] interest," while the prevailing doctrine instructs that

"state law controls as to the existence of a property interest"; and noting that "state law plays a role in determining the existence of property or liberty interests"), *rev'd on other grounds,* 523 U.S. 272 (1998); *Martin v. Upchurch*, 67 F.3d 307, 1995 WL 563744, at \*2 n.2 (9th Cir. Sept. 22, 1995) (unpublished) (concluding that under *Sandin* a prisoner had no liberty interest in his prison job, but ruling that the prisoner had no property interest in the prison job because state law made prisoner employment a discretionary decision by prison officials). *See also Cosco*, 195 F.3d at 1223 n.3 (discussing Sixth Circuit's and Ninth Circuit's view). However, in several unpublished decisions, this Court, citing *Sandin*, held that the plaintiff prisoner had "no property interest in his prison job created under state law and protected by due process." *Clarkston v. Powers*, No. 00-5065, 234 F.3d 1267 (6th Cir. Nov. 2, 2000); *Perry v. Rose*, No. 99-5240, 205 F.3d 1341 (6th Cir. Feb. 7, 2000); *see also Izard v. Blair*, No. 97-6098, 173 F.3d 429 (6th Cir. Feb. 3, 1999) (citing *Bulger* for proposition that a prisoner has no constitutionally protected right to a job or wage, and noting that BOP regulations did not create a liberty interest, citing *Sandin*).

In any event, we need not decide today whether *Sandin* applies to protected property interests, because Pickelhaupt has failed to demonstrate that this purported right was clearly established. Although, as the district court held, *if* a property interest existed, it was clearly established in 2005 that a predeprivation hearing was required, it was *not* clearly established in 2005 that Pickelhaupt had a constitutionally protected property interest in a prison job at a set wage based on state regulations. As explained above, the Supreme Court's 1995 *Sandin* decision casts doubt on *Hewitt*-type property interests. For this reason, Pickelhaupt's reliance on this court's 1989 decision in *Newsom v. Norris*, 888 F.2d 371 (6th Cir. 1989), is equally unavailing, since *Sandin* cast doubt on the validity of that decision. *See Newsom*, 888 F.2d at 374 (stating that "[e]xisting precedent

-8-

confirms that the Constitution does not create a property or liberty interest in prison employment . . . and that any such interest must be created by state law by language of an unmistakably mandatory character," and that "[e]xisting precedent has recognized that 'prison officials' policy statements and other promulgations' can create constitutionally protected interests in favor of the prisoners" (internal quotation marks, alterations, and citations omitted)). Indeed, as noted above, several panels of this court have relied on *Sandin* to hold that a prisoner lacked a state-created property interest in employment, despite *Newsom*. Thus, the district court erred in ruling that Defendants were not entitled to qualified immunity for Pickelhaupt's Fourteenth Amendment procedural due process claim.

### IV. Promissory Estoppel Claim

Although the exercise of supplemental jurisdiction under 28 U.S.C. § 1367 is discretionary, when a federal claim is properly dismissed before trial, it is customary to dismiss the state-law claims without prejudice. *See Harper v. AutoAlliance Int'l., Inc.*, 392 F.3d 195, 210 (6th Cir. 2004). Dismissal of Pickelhaupt's state-law promissory estoppel claim for resolution in the state courts is in the best interests of both the federal and state courts here. *See id.*

### V. Conclusion

For the foregoing reasons, we **REVERSE** the decision of the district court as to Defendants Banks and Malone and **REMAND** with instructions to dismiss the action against these defendants on the basis of qualified immunity. The district court is further instructed to **DISMISS** Pickelhaupt's state-law promissory estoppel claim against them without prejudice.