NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0835n.06

NO. 14-3173

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Nov 04, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BARBARA MOORE, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT |
| v. | ) | FOR THE SOUTHERN DISTRICT |
| | ) | OF OHIO |
| CHRISTINE MONEY, et al., | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

BEFORE: McKEAGUE and GRIFFIN, Circuit Judges; POLSTER, District Judge.[*]

**POLSTER, District Judge.**  In this First Amendment retaliation case, Plaintiff Barbara

Moore, a former Department of Youth Services ("DYS") employee, alleges that Defendants,

individuals who were also employed by DYS, retaliated against her because of testimony she

provided in a civil rights case in which DYS was a defendant.  Defendants moved for summary

judgment, asserting the defense of qualified immunity, and the district court denied the motion.  For

the reasons set forth below, we REVERSE the district court's denial of qualified immunity to

Defendants.

---

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of
Ohio, sitting by designation.

**I.**

In November 2007, Moore became the Deputy Superintendent of Direct Services ("Deputy Superintendent") at DYS' Ohio River Valley Facility ("ORV"). As the Deputy Superintendent, Moore oversaw all of the housing units at ORV, which included directly supervising operations, safety and security of the facility. Moore was also generally responsible for making sure that ORV was in compliance with DYS policies and procedures.

In May 2008, DYS entered into a "Stipulation for Injunctive Relief" ("Stipulation") in *S.H. v. Reed,* No. 2:04-cv-1206, Doc. # 108 (S.D. Ohio, Marbley, J.[1]), a civil rights class action that challenged the conditions of confinement for youth in DYS facilities. As part of the Stipulation, the court retained jurisdiction to enforce the various terms set forth in the agreement.

In February 2010, the court in *S.H. v. Reed* was informed that DYS had a policy of denying meals to youth who refused to leave their rooms to eat in the cafeteria. According to the information that the Court received, these youths refused to leave their rooms because they were afraid of being sexually or physically assaulted. As a result, the court issued an order scheduling a status conference for February 24, 2010. The court's order required certain DYS employees, including Barbara Moore, to attend the conference. Prior to the status conference, the court obtained a copy of a DYS policy setting forth protocols for dealing with youth who refused to eat in the cafeteria ("Cafeteria Refusal Policy"). The Cafeteria Refusal Policy, dated August 5, 2009, provided, in part, that "[a] staff member MUST inform the youth that eating in the cafeteria is their only opportunity to receive a meal." At the status conference, Judge Marbley asked Moore questions about the Cafeteria Refusal Policy. Moore testified that while the Cafeteria Refusal Policy "was in full force"

---

[1]Judge Marbley is also the presiding judge in this case in the district court.

between August 2009 and February 2010, it was followed inconsistently; some youths who refused to eat in the cafeteria were given meals, while others were not. (R. 44-1 at 49; Page 520). Moore further testified that DYS rescinded the Cafeteria Refusal Policy on February 5, 2010 and reinstated it just a few days later, on February 8, 2010. (R. 44-1 at 51-52; Page 522-53).

Following the status conference, the court ordered DYS to change its Cafeteria Refusal Policy to reflect that youth must be fed and that any youth articulating a fear for his or her safety must be fed during the particular meal of refusal. The court also ordered DYS to provide the court with (1) summary information and data on meal refusals from the Scioto, ORV, and Indian River facilities for the period of August 5, 2009 to February 23, 2010; and (2) copies of log books and summary information on meal refusals from the Scioto, ORV, Indian River, and Circleville facilities.

After reviewing the log book data and summaries, the court issued an order scheduling a show cause hearing. The order explained that "[f]or *none* of the DYS juvenile correctional facilities does the summary data accurately reflect or match the data provided in the log books maintained by DYS." As a result, the court ordered the defendants to "show cause as to why they should not be held in contempt for submitting false and or inaccurate data pursuant to an Order of this Court."

The court held a two-day show cause hearing. Defendants called Moore as their first witness. Moore testified about the process by which she, along with other DYS personnel, collected and assembled the information that the court requested. Moore admitted that there were still "many instances" in which ORV used inaccurate data to determine how many youths were refusing meals and the reasons for those refusals. (R. 45-1 at 117; Page 913). In addition, Moore testified that, despite the court's order requiring DYS to change its Cafeteria Refusal Policy, there were still instances of youths not being fed. (R. 45-1 at 118-119; Page 914-15).

3

While the court ultimately decided not to hold DYS in contempt, it determined that DYS' protocol on meal refusals did not comply with the Stipulation and ordered the parties to jointly develop a new meal policy.

Moore alleges that as a result of her testimony at the status conference and show cause hearing, she was isolated from her co-workers, stripped of her responsibilities and accused of disloyalty. On March 15, 2011, DYS announced that it was closing the ORV facility. That was also Moore's last day of work at ORV; she never returned to work after voluntarily leaving to seek medical treatment. ORV closed around September 2011.

On February 8, 2011, Moore filed this lawsuit against Defendants in their individual and official capacities, except for Martha Spohn, whom is being sued in her individual capacity only. Moore alleges that Defendants retaliated against her because of her testimony in *S.H. v. Reed*, in violation of her rights under the First and Fourteenth Amendments of the United States Constitution. Defendants filed a motion for summary judgment on two grounds. First, Defendants argued that Moore could not establish a First Amendment retaliation claim and second, they argued that even if she could, they were entitled to qualified immunity.[2] The district court denied Defendants' motion, holding that Moore presented genuine issues of material fact as to whether her speech was protected under the First Amendment and that Defendants were not entitled to qualified immunity from Moore's retaliation claim. Defendants filed an interlocutory appeal.

---

[2] Prior to moving for summary judgment on qualified immunity grounds, Defendants asserted qualified immunity in a motion to dismiss, which the district court denied.

4

## II.

The Courts of Appeals have jurisdiction to hear appeals from "all final decisions of the district courts of the United States." 28 U.S.C. § 1291. "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291." *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S. Ct. 2806, 86 L.Ed .2d 411 (1985).

This Court reviews a district court's denial of qualified immunity de novo. *McCullum v. Tepe,* 693 F.3d 696, 699 (6th Cir. 2012). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed .2d 396 (1982). In considering a qualified-immunity claim, we undertake a two-step inquiry: (1) whether a constitutional right was violated on the facts alleged, and (2) whether the right was "clearly established" at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 232-33, 129 S. Ct. 808, 172 L.Ed .2d 565 (2009) (citation omitted). The Supreme Court has held that courts may address the two prongs of the inquiry in whatever order is most appropriate "in light of the circumstances in the particular case at hand." *Id.* at 236. We have interpreted this to mean that if a right was not clearly established at the time of the alleged constitutional violation, then we do not need to decide whether a constitutional violation occurred. *See Jones v. Byrnes,* 585 F.3d 971, 975 (6th Cir. 2009).

"For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable [government official] would understand that what he is doing violates that right."

5

*Harris v. City of Circleville,* 583 F.3d 356, 366–67 (6th Cir. 2009) (citation omitted). To determine whether a right was clearly established such that a reasonable government official should have known that what he did violated that right, courts look to "cases of controlling authority" or to "a consensus of cases of persuasive authority." *Ashcroft v. al-Kidd,* ___ U.S. ___, 131 S. Ct. 2074, 2086, 179 L.Ed.2d 1149 (2011) (internal quotation marks omitted).

Here, the district court, citing its prior order denying Defendants' motion to dismiss on qualified immunity grounds, concluded that:

> A reasonable person would understand that retaliating against a government employee who provided truthful testimony about a matter of public concern, specifically juvenile facilities and meal refusals occurring in these facilities, in compliance with a court order, would violate that employee's First Amendment rights.
> (R. 74 at 18; Page 1745).

After the district court issued its opinion, the Supreme Court in *Lane v. Franks*, __ U.S.___, 134 S.Ct. 2369, 2374-75, 189 L.Ed. 2d 312 (2014), a case arising from the Eleventh Circuit, held that the First Amendment protects a public employee who provides truthful testimony under oath outside of his ordinary job duties. Nonetheless, the Court upheld qualified immunity for the defendant because at the time of Lane's 2008 and 2009 trial testimony, neither Eleventh Circuit nor Supreme Court precedent provided clear notice that a public employee's testimony, given under oath and outside the scope of his ordinary job duties, is entitled to First Amendment protection. *Id.* at 2381. In so holding, the Supreme Court determined that "the relevant question for qualified immunity purposes" is whether the defendant could "reasonably have believed, at the time he fired [the plaintiff], that a government employer could fire an employee on account of testimony the employee gave...." *Id.* To answer that question, the Supreme Court looked to Eleventh Circuit decisions addressing whether testimony, either in-court testimony or deposition testimony, is

6

protected employee speech.  *Id.* at 2381-82.

Here, as the district conceded, at the time of Moore's testimony and the alleged retaliatory conduct, neither this Court nor the Supreme Court had addressed whether in-court testimony is protected public employee speech.[3]  Moreover, as highlighted by the Court in *Lane,* there was a circuit split among the other circuit courts that had decided this issue.  *Lane,* 134 S.Ct. at 2383; *see also* Matt Wolfe, *Does the First Amendment Protect Testimony by Public Employees?*, 77 Univ. Chi. L. Rev. 1473 (2010) (analyzing the circuit split).  Thus, at the time of Moore's testimony, there was no "controlling authority" or a "consensus of cases of persuasive authority" that could have put Defendants on notice that Moore's testimony was protected by the First Amendment.  *See Ashcroft,* S. Ct. at 2084 (internal quotation marks omitted).

### III. Conclusion

For the foregoing reasons, we REVERSE and hold that the Defendants are entitled to qualified immunity.

---

[3] Following oral argument, Moore's counsel filed a letter asserting that prior to the Supreme Court's decision in *Lane,* this Court, unlike the Eleventh Circuit, had clearly established that "truthful testimony from a public employee requested by a federal court is First Amendment protected speech." (Doc. # 29).  However, none of the cases that Moore cites concern in-court testimony, or even testimony compelled by a party in the context of litigation, such as deposition testimony.