NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0943n.06

Case No. 14-1216

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 22, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARK C. LOMBARDO, JR., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| KEVIN C. ERNST, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | OPINION |
| | ) | |

BEFORE: DAUGHTREY, KETHLEDGE, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD**, Circuit Judge. This case is before us for a second time. In the first instance, we reversed the district court's denial of summary judgment to Defendant on Plaintiff's Fourth Amendment claim. *Lombardo v. Ernst*, 553 F. App'x 489, 491-92 (6th Cir. 2014). We must now determine whether the district court properly granted summary judgment to Defendant on Plaintiff's Fourteenth Amendment claim. Because Plaintiff has not alleged that Defendant engaged in conduct intended to harm him or to worsen his legal plight, we **AFFIRM**.

**I.**

The facts of this case, as summarized in our previous opinion, are as follows:

> On July 11, 2011, Mark C. Lombardo, Jr. and his friend
> Shane Scott decided they would go "car hopping," or breaking into
> cars to steal things out of them. Lombardo and Scott eventually

noticed a police officer behind them during their car-hopping and decided to split up and run. Lombardo and Scott were on Van Dyke Road, near the border between the cities of Utica and Sterling Heights, Michigan, so a Utica police officer requested assistance from Sterling Heights. Officer Kevin C. Ernst of Sterling Heights responded to aid in the apprehension of the suspects.

By the time Ernst arrived, a Utica police officer had detained Scott already. The police convinced Scott to call Lombardo on the phone and induce him to meet somewhere in the vicinity so they also could apprehend Lombardo. Ernst then saw the silhouette of an individual, Lombardo, beginning to cross Van Dyke Road on the bridge over the Clinton River. Ernst drove his patrol car north on Van Dyke to approach the figure in the road, without his [overhead] lights engaged but using his spotlight.

Ernst parked his patrol car close to the center-turn lane of the five-lane road, illuminated Lombardo with his spotlight, and then got out of his patrol car. Ernst instructed Lombardo to stop, but Lombardo continued walking casually into the southbound lanes of Van Dyke Road. Ernst then grabbed Lombardo's left arm. As Ernst was leading Lombardo to the back of the patrol car by his arm, Lombardo began squirming and questioning the reason for Ernst's actions. At first, Lombardo was not aggressive, but, as the two neared the back of the patrol car, Lombardo became more agitated and began trying to pull his arm away from Ernst. At this point, Ernst tried to handcuff Lombardo. Because of Lombardo's long sleeve shirt and the rainy weather, Ernst had some difficulty with this task. Before Ernst could finish putting the handcuffs on Lombardo, both men were struck by a passing motorist.

*Lombardo*, 553 F. App'x at 490.

## II.

Lombardo filed suit under 42 U.S.C. § 1983, alleging a deprivation of his constitutional rights under the Fourth and Fourteenth Amendments. Ernst moved for summary judgment, asserting the defense of qualified immunity. Following a hearing, the district court granted qualified immunity on the Fourteenth Amendment claim, but denied qualified immunity on the Fourth Amendment claim. Ernst appealed the denial and we reversed, holding that the Fourth Amendment and § 1983 are not the proper vehicles for a suit seeking redress "for 'the accidental

effects of otherwise lawful government conduct.'" *Id.* at 491 (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989)). On remand, the district court granted summary judgment to Ernst on all claims and entered final judgment. Lombardo now appeals the district court's grant of summary judgment to Ernst on the Fourteenth Amendment claim. We review the grant of summary judgment de novo, taking all facts and inferences in the light most favorable to the non-moving party. *Jones v. Byrnes*, 585 F.3d 971, 974 (6th Cir. 2009) (per curiam).

## III.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Substantive due process ensures "freedom from government actions that 'shock the conscience.'" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 250 (6th Cir. 2003)). Analogizing his case to *Davis v. Brady*, 143 F.3d 1021 (6th Cir. 1998), Lombardo argues that Ernst violated his substantive due process rights by detaining him in the middle of the street in disregard of the danger of oncoming traffic. Ernst claims entitlement to qualified immunity.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This Court applies a two-step qualified-immunity inquiry, asking "(1) whether the officer violated a constitutional right and (2) if so, whether that constitutional right was clearly established such that a 'reasonable official would understand that what he is doing violates that right.'" *Simmonds v. Genesee Cnty.*, 682 F.3d 438, 443-44 (6th Cir. 2012) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). If the

plaintiff fails to establish either of these elements, we must grant qualified immunity. *Meals v. City of Memphis*, 493 F.3d 720, 729 (6th Cir. 2007). "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998); *but see Pearson v. Callahan*, 555 U.S. 223, 227 (2009) (abandoning the requirement that courts examine *Saucier*'s elements sequentially).

We hold that Lombardo has not established a prima facie case of a constitutional violation. While a police officer may violate a person's substantive due process rights through the pursuit of a suspect of a crime that results in injuries to the suspect or to a third party, *see Jones*, 585 F.3d at 976, the Supreme Court's decision in *Lewis* forecloses Lombardo's claim in this case. In *Lewis*, a police officer observed a motorcycle approaching at a high rate of speed. 523 U.S. at 836. The officer closely chased the motorcycle operator and his passenger, reaching speeds of up to 100 miles per hour. *Id.* at 836-37. As the driver of the motorcycle attempted a sharp left turn, the motorcycle flipped, ejecting both the driver and the passenger. *Id.* at 837. The passenger was thrown into the trajectory of the officer's patrol car, which skidded into and killed him. *Id.*

The passenger's estate sued under § 1983, alleging a deprivation of the passenger's Fourteenth Amendment substantive due process right to life. *Id.* The district court granted summary judgment to the officer on qualified-immunity grounds. *Id.* Citing evidence that the officer disregarded departmental policies regarding high-speed chases, the Ninth Circuit reversed and remanded for the district court to resolve the question of whether the officer's conduct

amounted to deliberate indifference. *Id.* at 838. The Supreme Court reversed and held that, in the context of a police pursuit that results in injury, the test is whether the officer's actions "shock the conscience." *Id.* at 846-47. Police actions that shock the conscience and arise to the level of a due process violation involve "a purpose to cause harm unrelated to the legitimate object of arrest." *Id.* at 836. The Supreme Court held that the officer's actions in *Lewis* did not meet the shocks-the-conscience test for the following reasons:

> [The officer] was faced with a course of lawless behavior for which the police were not to blame. They had done nothing to cause [the driver's] high-speed driving in the first place, nothing to excuse his flouting of the commonly understood law enforcement authority to control traffic, and nothing (beyond a refusal to call off the chase) to encourage him to race through traffic at breakneck speed forcing other drivers out of their travel lanes. [The driver's] outrageous behavior was practically instantaneous, and so was [the officer's] instinctive response. While prudence would have repressed the reaction, the officer's instinct was to do his job as a law enforcement officer, not to induce [the driver's] lawlessness, or to terrorize, cause harm, or kill. Prudence, that is, was subject to countervailing enforcement considerations, and while [the officer] exaggerated their demands, there is no reason to believe that they were tainted by an improper or malicious motive on his part.

*Id.* at 855.

The Supreme Court's rule is clear: police pursuits "with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Id.* at 854. We recently have applied *Lewis* in similar factual scenarios. In *Meals*, for example, an officer initiated and continued a high-speed chase of a vehicle that exceeded the speed limit without turning on her patrol car's blue lights or siren and without obtaining authority from a supervisor to continue the chase, in violation of multiple departmental policies. 493 F.3d at 723-24. The driver of the speeding vehicle collided with another car, killing himself and two of the car's occupants, and rendering a

third passenger in the car a paraplegic. *Id.* at 724. Nevertheless, we held that the officer did not engage in conduct that shocked the conscience because there was no evidence of intent on her part to cause the fleeing suspect's vehicle to crash. *Id.* at 730-31.

We reached a similar conclusion in *Jones*. There, two officers engaged in a high-speed chase of two armed-robbery suspects even after the suspects extinguished their car's headlights. 585 F.3d at 972. The chase resulted in a collision that killed an innocent third party. *Id.* The decedent's estate sued the officers under § 1983, asserting substantive due process violations. *Id.* The district court granted summary judgment to the officers on qualified-immunity grounds, and we affirmed, citing *Lewis* and *Meals* in support of the proposition that the officers' conduct did not shock the conscience. *Id.*; *see also id.* at 977-78. Moreover, we specifically noted that, unlike in *Lewis* and *Meals*, the officers' conduct was more justified by the fact that they were pursuing suspected armed robbers and not simply traffic-law violators. *Id.* at 977-78; *see also Lewis*, 523 U.S. at 853 (noting that, in deciding to pursue a suspect, a police officer must balance the risk to human life with the need to enforce the law).

Lombardo has failed to offer evidence that Ernst acted with a purpose to harm him. Rather, Lombardo's arguments—focusing on his detention in the middle of the road, Ernst's failure to turn on his overhead lights, and Ernst's shining of a spotlight into the eyes of oncoming motorists—sound in negligence. But negligence—even gross negligence—does not suffice to state a substantive due process claim in the context of police pursuits. *See Sitzes v. City of W. Memphis Ark.*, 606 F.3d 461, 466 (8th Cir. 2010) (citing *Lewis*, 523 U.S. at 853-54). A midlevel culpability standard is not sensible in fast-paced situations, such as the one presented in this case, where actual deliberation by the officer is not practical. *Lewis*, 523 U.S. at 851; *see also Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002). As we stated in our

previous opinion, "Lombardo . . . seeks to hold Ernst accountable for the poor driving of a passing motorist."  553 F. App'x at 491.  This is not sufficient; only police conduct *intended* to harm Lombardo or to worsen his legal plight would suffice to state a substantive due process claim.  Lombardo has not alleged any such conduct.  Accordingly, his claim fails.[1]

## IV.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[1] Lombardo's analogy of his case to our decision in *Davis* is inapt.  In *Davis*, police arrested an inebriated homeless man for breaking the windows of a local mission in Flint, Michigan.  143 F.3d at 1023.  Upon learning that the county jail was full, however, the police released Davis on a stretch of dark, unfamiliar road on the outskirts of Flint. *Id.*  Later that evening, a car struck Davis, resulting in the amputation of his leg and rendering him a semi-quadriplegic. *Id.*  We held that the police exhibited deliberate indifference to the threat of injury to Davis because they knew, or reasonably should have known, that he was drunk and unable to care for himself after they abandoned him. *Id.* at 1026-27.  *Davis* is inapposite in this case for two reasons.  First, it did not involve a fast-paced police pursuit.  Unlike the officer in this case, the officers in *Davis* had ample time for deliberation prior to their abandonment of the victim, thereby triggering the deliberate-indifference standard.  Second, as noted by the district court at the summary-judgment hearing, the police in *Davis* created the danger to the injury victim.  Here, by contrast, "Mr. Lombardo put himself in the streets.  If they had taken him out of the street and put him back on the street, then *Davis* would be on all fours."